**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESSICA MULHERN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-2959 |
| | : | |
| **SECURITAS SECURITY SERVICES** | : | |
| **USA INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                       September 14, 2022

A mother began working as a front desk concierge at a condominium building. She told her manager three weeks later she needed to miss work that day to attend to her six-year-old daughter's decompensating mental health. The mother checked her six-year-old daughter into a children's crisis hospital for the next two days. The hospital took the mother's phone, and the mother claims she could not call work without a phone and compounded by her personal distress. The mother texted her employer after two hospital days with her daughter explaining she needs to go back and forth to the hospital to see her daughter and meet with doctors. Her manager responded she is no longer an employee and requires the mother return her work uniform.

The mother sued her former employer under the Pennsylvania Human Relations Act for discriminating against her because her daughter suffers a disclosed disability. The employer now moves to dismiss. We must examine the circumstances surrounding the firing of the mother three days after notifying her employer of her daughter's mental health disability. We find the mother pleads enough facts, particularly based on the firing in response to a text message while the daughter is still in hospital care, to allow her to proceed into discovery on a claim for associational discrimination under Pennsylvania Law.

I.   **Alleged facts**

Securitas Security Services USA Inc. hired Jessica Mulhern to be a Front Desk Concierge on September 14, 2020.[1] A physician diagnosed Ms. Mulhern's six-year-old daughter with mental health issues.[2] Ms. Mulhern's daughter's decompensating mental state required Ms. Mulhern to call out of work to care for her daughter at home on October 5, 2020.[3] Ms. Mulhern took her daughter to a mental crisis hospital the next day.[4] Ms. Mulhern did not notify her manager she would not be at work on October 6 or 7.[5] The hospital required her to turn in her phone.[6] Ms. Mulhern delayed contacting her manager when the hospital returned the phone because of her own mental state.[7] But Ms. Mulhern explained her absence to her manager by text message on October 8, 2020 (three days after disclosing her daughter's disability) because she needs to go back and forth from work to the hospital to see her daughter and meet with doctors.[8] Her manager responded by text she is no longer employed and to return her uniform. Securitas fired Ms. Mulhern on October 8, 2020.[9] Securitas had no other issues or complaints about her work.[10]

Ms. Mulhern sued Securitas seeking recovery for associational discrimination under the Pennsylvania Human Relations Act because Securitas fired her "as a result of her disclos[ing] . . . her child had a diagnosed disability."[11]

II.   **Analysis**

Securitas moves to dismiss arguing Ms. Mulhern failed to plead sufficient facts allowing us to plausibly infer associational discrimination under the Act.[12] A complaint "need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."[13] Ms. Mulhern plausibly states an associational discrimination claim under the Pennsylvania Human Relations Act.

2

Ms. Mulhern plead Securitas fired her "as a result of her disclosure . . . her child had a diagnosed disability."[14] Associational discrimination is discrimination against a person for his or her relationship with another person. For example, an employer who fires an employee for having a disability may have engaged in direct discrimination. But an employer who fires an employee for having a child with a disability may have engaged in associational discrimination.[15]

Ms. Mulhern can establish a prima facie case for associational discrimination by pleading: (1) she "qualified" for her job when Securitas fired her; (2) Securitas fired her; (3) Securitas knew her daughter had a disability as the time it fired her; and, (4) the firing occurred under circumstances raising a reasonable inference her daughter's disability contributed to Securitas's decision to fire her.[16]

Securitas does not dispute Ms. Mulhern's qualifications for her job, her employment determination being an adverse action, or its knowledge of Ms. Mulhern's daughter's mental health disability. Our analysis at this early stage focuses on whether Ms. Mulhern's daughter's mental health disability plausibly could have been determinative of her employment termination. We find Ms. Mulhern pleads sufficient facts to create a reasonable inference of causation.

Ms. Mulhern can adequately plead this fourth causation element "where an adverse employment action was 'motivated by unfounded stereotypes or assumptions about the need to care for a disabled person;' the 'disabled relative's perceived health care costs to the company,' 'fear of an employee contracting or spreading a relative's disease,' or because the employee was perceived to be distracted by the relative's disability."[17] These are examples in our Circuit's teachings and not an exhaustive list.[18] Our Court of Appeals instructed "[u]nder the association provision, there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative."[19]

"If an employee's termination is not based on any assumption regarding future absences related to their relative's care but is instead the result of a record of past absences and/or clear indication that additional time off will be needed in the future, no . . . violation has occurred."[20]

Ms. Mulhern alleges Securitas fired her "as a result of her disclos[ing] . . . her child had a diagnosed disability."[21] Ms. Mulhern sufficiently pleads her daughter has "diagnosed mental health issues."[22] We find Securitas's reliance on *Koci v. Central City Optical Co.* unpersuasive and distinguishable.[23] Judge Dalzell in *Koci* found the employee "fail[ed] to allege any facts to establish . . . her son was himself disabled." The employee in *Koci* also asked Judge Dalzell to "reasonably infer" the employer "terminated her because of its erroneous assumption . . . she would have future attendance problems to take care of her son."[24]

Ms. Mulhern also does not allege Securitas fired her because of the days she missed from work or because of the days she will have to miss in the future to take care of her daughter. Ms. Mulhern does not allege Securitas would have failed to accommodate her schedule. This distinction in allegations allows us to reasonably infer Ms. Mulhern's daughter's mental health disability plausibly could have motivated the employment termination.[25]

This inference is bolstered by the temporal proximity of Ms. Mulhern's disclosure of her daughter's disability on October 5 and Securitas firing her three days later. Counsel does not cite associational discrimination cases within our Circuit addressing temporal proximity but our Court of Appeals instructs "temporal proximity between the protected activity and the termination is [itself] sufficient to establish a causal link" in the disability discrimination context.[26] The Court of Appeals for the Tenth Circuit held "close temporal proximity is important in establishing a prima facie case of association discrimination" and "is a circumstance that should be given considerable weight."[27] We will consider temporal proximity as a circumstance raising a reasonable inference

4

Ms. Mulhern's daughter's disability contributed to the employer's decision to fire her.

Ms. Mulhern first informed Securitas of her daughter's disability on October 5, 2020.[28] She described by text message her daughter's mental health situation and her absence from work due to her daughter's hospital stay on October 8, 2020.[29] Securitas terminated Ms. Mulhern's employment the same day by text message.[30] Three days separated Ms. Mulhern's initial disclosure of her daughter's disability and her employment termination.[31] Securitas fired Ms. Mulhern the same day she gave an additional explanation about her daughter's mental health situation.[32] "The amount of time between the protected activity and the [termination] is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation."[33]

Dismissal of the amended Complaint as this early stage is inappropriate.[34] Judges in our Circuit deny motions to dismiss when "allegations in the Complaint require a context specific inquiry and necessitate the development of a factual record before the Court can decide[ ] whether, as a matter of law . . . [a defendant] could be held liable for association discrimination."[35] It is at least plausible Securitas terminated Ms. Mulhern because of her daughter's mental health disability. Fact discovery will guide whether Securitas is liable for associational discrimination.

### III. Conclusion

Ms. Mulhern alleges facts allowing us to reasonably infer her disclosing her daughter's mental health disability could have motivated Securitas's decision to fire her three days later. We deny Securitas's motion to dismiss to allow discovery into this plausible claim.

---

[1] ECF Doc. No. 7 ¶ 8.

[2] *Id.* ¶ 9.

[3] *Id.* ¶ 10.

---

[4] *Id.* ¶ 12.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 10–11.

[7] *Id.* ¶ 15.

[8] *Id.*

[9] *Id.* ¶ 17.

[10] *Id.* ¶ 18.

[11] *Id.* ¶¶ 20–26. Ms. Mulhern did not identify which section or subsection of the Act allowing her relief. Ms. Mulhern originally filed this action in the Philadelphia County Court of Common Pleas. ECF Doc. No. 1 ¶ 1. Securitas removed to this Court. *Id.* Securitas moved to dismiss this action for failure to state a claim. ECF Doc No. 5. Ms. Mulhern subsequently filed an amended Complaint. ECF 7 ¶ 8. The amended Complaint does not include Ms. Mulhern's Philadelphia Fair Practices Ordinance claim. Securitas again moved to dismiss Ms. Mulhern's claim. ECF Doc. No. 11.

[12] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that …

'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[13] *Huggard v. Crown Bank*, No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb. 17, 2012).

[14] ECF Doc. No. 7 ¶ 24

[15] *See, e.g.*, *R.S. By R.D.S. v. Butler Cnty., Pennsylvania*, 700 F. App'x 105, 109 (3d Cir. 2017) (discussing the associational discrimination claims of parents as well as the direct discrimination of a disabled child).

[16] *Dodson v. Coatesville Hospital Corp.*, 773 F.App'x 78, 83 n.8 (3d Cir. 2019). Our Court of Appeals requires the same prima facie case for an associational discrimination claim under the Americans with Disabilities Act and Pennsylvania Human Relations Act. *See id.* at 83.

[17] *Kontoulis v. Enclara Pharmacia, Inc.*, No. 18-3864, 2020 WL 6321568, at *5 (E.D. Pa. Oct. 28, 2020) (quoting *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 & n.7 (3d Cir. 2009)).

[18] *See Dodson*, 733 F.App'x at 83 n.8. (citing *Erdman*, 582 F.3d at 511). Compare with *Larimer v. Int'l Bus. Machines Corp.*, 370 F.3d 698, 702 (7th Cir. 2004) (Employee must "present evidence that his case falls in one of the three categories in which an employer has a motive to discriminate against a nondisabled employee who is merely associated with a disabled person."). The three categories are expense, disability by association (fear of spreading or contracting), and distraction. *Id.* at 700.

[19] *Erdman*, 582 F.3d at 510.

[20] *Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998).

[21] ECF Doc. No. 7 ¶ 24.

[22] *Id.* ¶ 9.

[23] *Koci v. Cent. City Optical Co.*, 69 F. Supp. 3d 483, 488 (E.D. Pa. 2014).

[24] *Id.*

[25] *Erdman*, 582 F.3d at 510.

[26] *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (quoting *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997).

---

[27] *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008).

[28] ECF Doc. No. 7 ¶¶ 10-11.

[29] *Id.* ¶ 16.

[30] *Id.* ¶ 17

[31] *Id.* ¶¶ 8-17.

[32] *Id.* ¶¶ 16-17.

[33] *Shellenberger*, 318 F.3d at 189.

[34] *See Pollere v. USIG Pennsylvania, Inc.*, 136 F. Supp. 3d 680, 686 (E.D. Pa. 2015).

[35] *Huggard*, 2012 WL 529548, at *4; *see also Pollere*, 136 F. Supp. 3d at 686.